The next case on the call of the docket is Agenda No. 14, Case No. 124690, West Bend Mutual Insurance Company v. TRRS Corp. et al. Gary Bernardino is the appellee. Counsel, would you please begin, Mr. Lucas? May it please the Court. Tom Lucas for the appellant of West Bend Mutual Insurance Company. We are here today. The issue that is before the Court involves the propriety of an order issued by the Circuit Court of Henry County, which stayed at Mr. Bernardino's workers' compensation claim proceedings. So the Circuit Court could decide a declaratory judgment action that West Bend filed that relates to the workers' compensation claim. The Circuit Court issued a state order pursuant to this Court's opinion in Employers Mutual v. Skilling and a First District opinion in Hastings Mutual v. Ultimate Backyard. The Second District Appellate Court agreed with the Circuit Court in its application of Skilling, but reversed the Circuit Court's state order because it refused to follow the Ultimate Backyard opinion. And we asked this Court to reverse the Appellate Court and affront the Circuit Court's order stating the work-out proceedings. And the Circuit Court was correct for three basic reasons. First, the Circuit Court and the Commission have concurrent jurisdiction to decide the insurance coverage degree that West Bend will apply. Second, based on the primary jurisdiction doctrine, the primary jurisdiction doctrine determined that it's the Circuit Court which has the primary jurisdiction to decide the coverage issue, not the Commission. Mr. Lucas, were you a party before the Commission? No, West Bend is a party before the Commission, but I'm not. No, I'm not sure. Yes, yes, West Bend is a party before the Commission. And I guess my third point in why the Circuit Court was correct is because it was a proper exercise of the Circuit Court's equitable powers to stay the Commission proceedings while to give it the opportunity to decide the coverage case. And to give the Court a little background, Mr. Bernardino was injured at work in April 2017. In March of 2018, he filed his application for adjustment of claim to the Commission. And about a week later, April 2017, West Bend was first notified of the injury and of the claim. West Bend files the D.J. and the basis for non-coverage is late notice of injury. And at around the time that the D.J. is filed, Mr. Bernardino files in the Commission a Section 19 petition for medical benefits, fees, and sanctions. And also at that time, he amended his application for adjustment of claim and brought West Bend into the proceedings. So West Bend is a party. And that's what prompted the motion to stay. Because Bernardino is asking the Commission to decide the coverage case to impose liability on West Bend. And so we asked that the Circuit Court to stay those proceedings so the Circuit Court could decide the coverage case. The Circuit Court entered a stay order, and the 2nd District reversed. And as I said, the 2nd District reversed not because the Circuit Court misapplied the skilling, but because it disagreed with Ultimate Backyard, the 1st District. And so I'd like to say a little about those 2 cases, skilling and Ultimate Backyard, because they're the most prominent cases and opinions in this case. In skilling, the insurance company filed a D.J. contending that its work comp policy didn't cover 2 claims in the work comp commission for Illinois injuries because it argued its policy only covered Wisconsin injuries. The Circuit Court dismissed, said those issues based on exhaustion of remedies had to be first brought in the commission before they get to the Circuit Court. Until the Court affirmed, this Court reversed. This Court reversed based first on the concurrent jurisdiction doctrine. And the concurrent jurisdiction doctrine, essentially what the Court does is it looks at the statute setting up the agency, or in this case the commission, looks at the Workers' Compensation Act, and asks, does the Comp Act explicitly divest the Circuit Court of this jurisdiction to decide the issue before it? This Court looked at the Comp Act and said, no, there's nothing explicitly in the Comp Act that divested the Circuit Court of its jurisdiction to decide the coverage case that was presented in skilling. Can the comp commission decide the issue of late notice? Based on concurrent jurisdiction, the commission could decide the issue, but the issue is also the Circuit Court has the jurisdiction. So if the commission decided the issue adversely, then you would have resort to the Circuit Court, is that correct, on administrative review? That's correct. If the Circuit Court, I'm sorry, if the commission decided the issue, then there would be appeal. If the arbitrator decided, appeal to the commission and then appeal to the Circuit Court. But that is true. But the primary jurisdiction doctrine says the commission should decide the late notice issue. Let's talk about that for a minute. It seems that this, the primary jurisdiction doctrine, that this court has always and really only said that the doctrine is about court-staying judicial proceedings where administrative expertise is called for. And I can't find any, maybe you have one, where it has never said that it's about court-staying administrative proceedings while legal matters are pending. That's true. We look very hard. Other than ultimate backyard, that's the only case that we could find where the court stayed the administrative proceedings to allow the court to decide the coverage. How did they do that in the face of Supreme Court precedent? Wasn't the Second District therefore correct in saying that ultimate backyard shouldn't be followed? Well, what the First District said when they examined, when they got to the stage, was first that the Circuit Courts have original jurisdiction over all justiciable matters. So the Circuit Court has jurisdiction to decide the coverage case. And then when you apply the primary jurisdiction doctrine, the result of that application of that doctrine is it's the Circuit Court that should decide. The Second District, in its opinion, what the court said was, well, the state is contrary to the underlying principles that underlie the primary jurisdiction doctrine. But that really doesn't hold up because if the underlying principles of the doctrine, as this court said in Skilling and Kellerman, is to maintain the proper relationship between the court and the commission, and if you apply that doctrine and you determine that it's the court, not the commission, that should decide the issue, then the state isn't contrary to the underlying principle. It furthers the underlying principle. It furthers the principle that the issue is one that the Circuit Court should decide. And when we look at the issue here, like notice, how do you apply the primary jurisdiction doctrine? Well, you ask, is the issue that's presented, is it one that requires the expertise or knowledge of the commission to decide? Or is it one that's commonly brought in the Circuit Court? And when you look at late notice, deciding that issue doesn't require the expertise or knowledge of the commission to decide. And it is an issue that's commonly brought in the Circuit Court. And it's properly brought there. And in our case, the Circuit Court has a long history of jurisprudence from this court and the lower courts on late notice coverage cases that it can call upon to assist in deciding the case. So when we consider the application of the primary jurisdiction doctrine, the state enforces and encourages that result, the result that the case be decided in the court. And Your Honor's correct. I mean, if we look at all of the cases, other than Ellsmith backyard probably, that discuss primary jurisdiction, they all do speak in terms of the Circuit Court staying its jurisdiction to allow the commission to address an issue. But again, I get back to what's the purpose of the doctrine? And really, the purpose of the doctrine is where should it properly be decided? Let me ask a question. You indicated that the stay issue, of course, is the way you framed it, an equitable issue. So what's the problem? Why can't both these issues, the late notice on one hand and the actual injury case, move forward at the same time? Well, if that takes place. I mean, the problems, I think there are several. One is it does add cost and delay to the process by either having the commission go first or having the appeal track. It adds cost and delay. It does create the potential for conflicting or inconsistent decisions. And I think the court has an interest here. And when we're weighing the equities, I think we have to consider the court's interest. And the court's interest is to decide cases that are properly before the court. And so it should be properly before the court. The court should be able to decide without interference from the commission. And the other thing I would point out in looking over this case in preparation for coming here this morning, I think one of the problems that could be created if we have the commission and the court either going head-to-head or the commission going first, is what happens if the commission makes a finding of fact relating to late notice. And there could be factual issues that come up in late notice. For example, does the employer have a reasonable excuse for the delay in notice? That's not an issue that requires the commission's expertise to decide. But let's say the commission makes a finding of fact on the reasonableness of notice or on the excuse raised. Well, the findings of fact on the review in the circuit court are manifest ways of the evidence. So if the issue then gets to the circuit court, can the circuit court decide the late notice factual issue in Oval? Or does it have to apply a manifest way to the evidence standard? So I think that's a potential problem with bill tracking or having the commission go first. Can the court decide on its own without deference to the commission? And so I think also when we're talking about the stay, being an equitable argument or equitable remedy, it is within the court's power to decide. It's not decided through no vote. And so we have to give deference to Judge Meyer in his decision to stay the case. And another thing, you know, when we talk about the equities here, you know, the Bernardino and Ametis arguments, they argue that Mr. Bernardino's case is being denied, that the commission's exclusive jurisdiction over comp claims is being invaded by the DG and by the state. Neither of those things is true. The DG will not decide an issue relating to Mr. Bernardino's rights for documents. It will only decide whether West Bend is required to pay. Its claim still exists if the court says there's no coverage, the employer is still primarily obligated to pay whatever benefits are awarded by the court and, I mean, by the commission. And the commission's ability to determine those benefits or determine whether the employer has any defenses to Bernardino's claim, they're not infringed on by the DG or by the state. Because, again, the DG only decides the question of coverage, the question of late notice. And so Mr. Bernardino's rights and the commission's exclusive jurisdiction aren't affected by the DG or by the state. And the other point I would raise on the issue of equity, it doesn't give enough credit to Judge Meyer. I mean, Judge Meyer is concerned about Mr. Bernardino's claim and trying to get the DG decided as expeditiously as possible. So the court is going to be concerned about the individual's rights and also the state furthers one of the purposes for DG action, which is, in insurance coverage cases, which is to, as quickly as possible, determine the party's rights to coverage before liability is imposed. That's why the DGs are filed in order to get that determination made before the court decides whether the claimant is entitled to damages from the insurer. And the state furthers that goal by permitting the DG to be decided before the commission decides liability, coverage and liability, which is what Mr. Bernardino wants to happen, wants the commission to decide that what spend is obligated to pay benefits. The DG will make that determination before the commission makes the liability determination. So the purpose of the DG is further, the purpose is underlying the DG action. So when you consider the equities, when you consider the interest of the court and the parties, the state order was brought, and for the reasons stated, we ask that this court reverse the Second District Court of Appeals and affirm the Supreme Court of McHenry County's order, disdaining Mr. Bernardino's declaratory right to work as a county prosecutor. Thank you. Thank you, Mr. Lucas. Mr. Edens? Robert Edens. I represent Mr. Bernardino, who is the appellee here. Mr. Edens, could you begin? I think it might be helpful to the court if you discuss the last point that was raised by Mr. Lucas. In other words, even if the primary jurisdiction doctrine did not compel staying in the IWCC proceeding while the coverage dispute was pending, was the circuit court nevertheless within its authority to do that? I mean, he talked in terms of judicial discretion. Okay, I'll skip over some points and go right to the authority of the circuit court with respect to its ability to stay a Illinois workers' compensation cause of action currently pending. The Illinois Compensation Act is a comprehensive scheme which creates duties and obligations on the part of employers and employees with respect to their ability to have remedies, which are not in common law. There is no 19B in common law. There is no right to an immediate medical assistance, immediate ability to receive compensation, all of which my client is being denied at this time. As such, the question is, can a circuit court under Article VI, Section 9 of the Illinois Constitution, have the authority to go across the aisle and stop the legislature from actually creating a scheme or system by which to provide employees with benefits? If you look at the case law in the area, that would be Hartley, Knox, Bradley, ADF, Freight, Keating. It indicates that when it comes to issues of the nature and extent, the payment of TTE, these are clearly within the exclusive jurisdiction of the Workers' Compensation Commission. The stay of these proceedings or the stopping of my client's ability to receive these benefits under the Act is a violation of his rights. If I may, these benefits are not judicial matters under Section VI, Article 9. Isn't this limited to whether or not there was late notice? No. The state is staying any and all action in front of the Illinois Workers' Compensation Commission. I meant in the declaratory judgment. The circuit court is not going to decide the underlying issues. No, it is not. However, with respect to the issue of the notice and the application of primary jurisdiction doctrine to notice, yes, the purpose is to create harmony between the agency and the court. And that is done by application of two policies. One is, is the Workers' Compensation Commission have some expertise in deciding issues of notice? Skilling says no. Two, Skilling tells us that the decision about notice in this case will not interfere with some regulatory rate setting or promoting some statutory scheme, which is what Supreme Court cases have been involved with. So, therefore, the circuit court under the – I'm struggling with Skilling. I'm struggling with Skilling here. So help me put that. You just said in Skilling this court decided that – how did you put it? That notice, late notice, should be decided in the commission? No. It decided that late notice was – that the circuit court had primary jurisdiction over late notice, and, therefore, it should not state its proceedings. It didn't state it should decide it. What it said was it shouldn't state its proceedings. The rule for primary jurisdiction is clear. The rule says that where a circuit court and an agency have concurrent jurisdiction, the circuit court should, in some instances, state its proceedings or some portion of it pending a referral to the agency. Now, in Skilling, was the issue late notice? The court's ultimate paragraph of decision-making is, we conclude that the circuit court should not have declined resolution of the insurance coverage dispute in deference of the commission. It is the particular province of the courts to resolve questions of law, such as the one presented in the instant declaratory judgment case. Administrative agencies are given wide latitude in resolving factual issues, but not in resolving matters of law. In my reading, that's the active paragraph in Skilling, is the court was looking at what is the declaratory judgment about. It's a decision about the interpretation of the contract, and, therefore, this is not the kind of issue that earlier the court talks about should be remanded to an agency that has specialized or technical expertise that would help resolve a controversy. Certainly issues about injury and that kind of thing certainly would go to the commission. But isn't what Skilling is saying is that there are some issues, like interpretation of the contract, should not be the court should not defer to the commission, because those are legal decisions in terms of contract interpretation and not within the expertise of the commission. I think that's what Skilling is saying. So I'm not sure what you're saying about late notice, how that fits. Okay. Skilling is indicating that the court has expertise. What it's also saying is that the agency does not have a specialized expertise in such things as making determinations as to whether rates are fair. No, that's not what they're talking about. Contract interpretation, legal issue of contract interpretation. That's specifically what Skilling is talking about. That is correct, but Skilling didn't involve the stay of an Illinois workers' compensation. At no time did Skilling say we should stop the Illinois workers' compensation commission from hearing it. It's an application which it has a duty to do under the Act. So you agree, though, Skilling stands to the proposition, at least in this setting here, that it is the province of the courts to resolve questions of law, such as the one presented in the instant declaratory judgment case. So the court is the place to decide declaratory judgments, and the commission is the place to decide the other issues that are raised in workers' comp. Is that how you read Skilling or you read it differently? The primary jurisdiction doctrine, which is to promote harmony, indicates that neither of the purposes or the policies are present to refer the case to the agency. It doesn't say that the agency, under Section 18, is not competent to hear the issue. Under Section 18, the Illinois workers' compensation has the authority and ability to hear all matters of law and fact regarding a claim before it. The issue of notice is a question of law and does contain issue of fact, and therefore the agency is competent to hear it. Should the court defer to the agency? No, it could go forward on its proceedings. Is there some other policy or guideline which the court should possibly use to stay its own proceedings other than those two policies? Possibly economic efficiency, excessive cost to the parties, time. These type of policies may even require the judicial branch to stay while the agency goes forward. However, again, both of them have concurrent jurisdiction to decide the issue. Both are competent to decide the issue. So they both can go forward at the same time? Yes, they could. There is no case that I'm aware of that says that they cannot. If I may, with respect to the issue, again, the other issues which happen, and when you start going beyond just the application of primary jurisdiction and promoting harmony, there comes up what happens when you issue a state or does the court have the authority to issue a state. As I indicated, the remedies and defenses under the Act are not judicial matters. And a state does in fact impact the rights and remedies under the Act. And therefore, what the court would be doing by issuing a state would be infringing on the legislative intent in the creation of those remedies that Mr. Bernardino has a right to and the duties of the Illinois Workers' Compensation Commission in hearing his pleadings. It's putting a stay on those. And it has a major impact on his ability to pay for his daily living expenses, his ability to obtain needed medical. And if you're going to discuss this in a fashion of equity, well, let's discuss the equity. What is really going on here? West Bend, and they've said the facts a little bit off, what happened was in March we filed an application for adjustment. In April, West Bend comes forward and goes under a reservation of rights. In September, I filed a 19B, and I represented Mr. Bernardino in both forums. We filed a 19B. In October, we stepped up, and Dan Egan from West Bend said, we should name West Bend as a respondent. So I did so, and we agreed to go forward on November 19th for a trial on the 19B and related matters. On those afterwards, and almost concurrent with that, West Bend files a deck action and an emergency motion. I filed, and this is what wasn't expected, I came across the way, and I filed an emergency motion to vacate that. It was, in fact, vacated personally because it didn't comply with local rules and it was not an emergency. But they didn't play this in face to state. And then they heard the merits of the motions and, again, installed the state based on a finding of primary jurisdiction as a matter of law and that the institution of the state by following Hastings and nothing more. Hastings v. Ultimate Backyard, which was the law under the first district, was merely followed by the court, and they implemented the state. The second district, when I took it up, said no, that that's turning primary jurisdiction upside down. There is no case other than Hastings where a court says that under primary jurisdiction there is a policy or equity rules of law which should indicate the court should stay a legitimate action of an agency, and specifically an agency such as the Illinois Workers' Compensation Commission, which has a comprehensive scheme for rewarding or not rewarding, excuse me, for providing for remedies to an injured employee, including medical as well as wage. If the circuit court, let's say in this case, determines that there is no coverage because of late notice, what happens in the commission? If they determine there is no coverage and no duty to defend, then- That's really important. No, that's okay. No, no, it is okay because I'm trying to get to the question. I'm trying to get to your question. Maybe even more importantly is what happens about the duty to defend? Let's say the circuit court says there's no coverage, and more importantly, there's no duty to defend. There's no West Bend lawyer that's going to show up in the commission. What happens in the commission? Okay, if you were to ask me about the rules of evidence, which are not present in this particular case, we haven't reached it. This isn't like keying. My question is, what lawyer is going to show up to defend in this case? My answer is none, and a staffle would probably prevent the Illinois Workers' Compensation Commission, which is subject to the rules of evidence as well as the other rules, from basically holding otherwise. They would be able to- So now we go back to the commission. We've got two things going on at the same time. The trial court says there's no duty to defend, so no lawyer shows up in the commission, and the commission is going to say, okay, we're going forward, even though there's no insurance available or a duty to defend, correct? Is that what you're saying? If the commission makes the same holding, that there is no duty to defend and no coverage due to late notice, then the DEC action is really, at that point, of no issue because they've won. However, if they hold the other way and find that there is a duty to defend and that there was no prejudice in the late notice, then I think that the rules of evidence once again apply. I believe Kendall is exactly on point with- with respect to that in that they did exactly that. They made a ruling at the Workers' Compensation Commission concerning these issues, came over to the circuit court, and the circuit court said, excuse me, we're not going to retry the same issues again. You're just here trying to take a second swing. Sorry. So ultimately, and I'm not sure I understood what you just said, but ultimately you're saying that if the commission makes findings of fact, even though we have concurrent jurisdiction, the trial court has to defer to the findings of fact on the issue of late notice. I would think so. But we're not here today with those issues before us. We are not at Kendall, repeating, with respect to whether or not a commission has done that.  My client has not received the benefits. His 19B petition has been put on hold, and the court is now traveling down this path. Now, if the decision as to notice and as to their duty to defend is such a- and it's in his brief that it can be decided usually by summary judgment, well, then, if it's such a matter of law, the little fact involved, which is indicated in their brief, that this would be found by the commission as well. It would go through the commission. The commission would find it. If it comes up on appeals, the circuit court could then, once again, review it for whether or not it violated the law. It would be a review de novo. Those issues. If it made rulings of fact, there would be an abuse of discretion. But it still comes up through the workers' compensation pursuant to Rule 19. And if you look at Heartland, Heartland indicates that the Illinois Workers' Compensation Act and the authority of the circuit court to make rulings pursuant to make rulings with regard- or review with regard to the Illinois Workers' Compensation Act decisions is only that of review. And only the review that is provided to it through the statutory scheme developed by the legislature in this case, Rule 19-F. By implementing a state, they are bypassing 19-F and imposing-basically modifying my client's rights under the act. They don't have jurisdiction over Mr. Bernadino and the workers' compensation case. They don't have jurisdiction over whether or not he should receive benefits, whether he should-whether the defense has any defense to any of those claims by my client. All of these things are not within the jurisdiction of the court. And therefore, I would say that a state violates the Article 6, Section 9, and that there is a comprehensive scheme with respect to those issues. There are other issues which are brought up by the defense in this matter, but I think the one thing that should be noticed in this case is that the reason West Bank came across was to stay the payment of benefits. Mr. Bernadino, the employers, and everyone else, is aligned against the payment of benefits. The filing of the DECA action stops the payment of benefits. The state stops the payment of benefits. If it wasn't for Mr. Bernadino- So you're telling me that just filing the DECA action stays benefits? No, the order of the court stays the benefits. The state. The state is it. This is all about the state. It is not about primary jurisdiction being with the court. Should we be concerned about inconsistent decisions that could come out of the court or in the commission on the issue of late notice? Again, if notice, which is, as they indicate, pretty much a question of law with very little fact involved, either they gave notice or they did not, then it will come up and it will be reviewed to know if there was some statements- You mean in the commission? It will come up through the commission from a hearing to the commission, to the commission, to the circuit court. I'm talking about when we're back in the argument presentation evidence posture. In other words, the court says, they both go, and then the court says, well, there's no duty to defend, and then you go to the commission and the commission says there is. Is there any need for the commission to defer to what the circuit court found? I would believe so. The Illinois Workers' Compensation Act indicates that the Illinois Workers' Compensation Commission is subject to the rules of evidence. The rules of procedure are accepted. There's no discovery involved. There are exceptions. So the same findings of fact that support the conclusions of law would be binding on the Illinois Workers' Compensation Commission. Thank you. Thank you. Thank you, counsel. Briefly, Your Honor, just a couple of points. First, on the issue of the circuit court's authority, well, that comes from its original jurisdiction and its inherent equitable powers. And I thought I heard a separation of powers argument coming from Mr. Bernadino. That issue has never been brought up. But I think that issue, if that's a concern, the Lawrence M case that was cited in the briefs for a different reason. The Lawrence M case says when you've got a court and a commission or an agency that both are involved on a matter, that separation of powers isn't really a concern. Did the court exercise discretion or was the court felt it was compelled under the primary jurisdiction doctrine to issue the state? I would argue that the question of the court's jurisdiction is the noble review. And that is really the question of the concurrent jurisdiction. But on the state directly, how do we address abuse of discretion? Because that's one of your arguments. Your argument is primary jurisdiction, concurrent jurisdiction, and then discretion by the judge in making an equitable determination. So the standard of review as to that third, whether discretion was used or not, is an abuse of discretion. If we feel he wrongly applied the primary jurisdiction doctrine and that is why he issued the state, where do we get to whether he abused his discretion? He didn't exercise discretion really, right? He just said primary jurisdiction doctrine applies. Well, he exercised his jurisdiction in issuing the state order. And he did that based upon a consideration of the court's interests and the party's interests. And that's in the record? Or did he merely say, I can do this based on the primary jurisdiction? Well, we had two hearings before Judge Mark. And I think he considered Mr. Bernardino's arguments. He considered our arguments. And he said, based upon the primary jurisdiction doctrine, that's what he recognized as supporting the state order. All right, okay, I got that. So if we disagree, as I said earlier, that there's really the opposite occurred here with respect to what other courts have done regarding our court has done with respect to the primary jurisdiction doctrine, and he based his, if you want to call it discretion, he exercised his discretion and utilized the primary jurisdiction doctrine, is that necessarily, then, an abuse of discretion if he was wrong in applying the primary jurisdiction doctrine? Or I'm just trying to find, is there a separate course here? I think there is, Ron, because I think we're talking about, well, the primary jurisdiction doctrine supports the circuit court's exercise in jurisdiction over the coverage case. So if that's the case, then the court says, okay, I have the original jurisdiction or concurrent. The primary jurisdiction doctrine says I can decide this case. Should I? Well, that's where the equities come in, and the court has an interest in exercising its jurisdiction. The court has the ability to move the case along, to interfere as little as possible with Mr. Bernardino's commission proceedings. Well, we don't have anything on the record that says I've considered the judicial economy. I've also considered, in this case, I don't see the insurance company gaming the system. I've weighed all that, and I'm going to exercise my discretion. And he based it on the primary jurisdiction doctrine. Well, Judge Meyer didn't go into a detailed explanation, but I don't think he just said, well, primary jurisdiction. And so I don't think that was his only basis. And I do think that Mr. Bernardino's argument is mixing concurrent jurisdiction and primary jurisdiction. Concurrent jurisdiction says both the commission and the courts have the ability, the authority, to decide the issue. The primary jurisdiction doctrine says because it doesn't involve an issue that requires commission expertise, the primary jurisdiction doctrine says the court should decide it. Counsel, sorry, Kendall. Well, that's what ultimate backyard said. Pardon? That's what backyard said. The ultimate backyard stayed the commission. That's correct. Counsel, sorry, Kendall. Kendall is distinguishable. And Kendall is distinguishable because there the insurance company did argue the coverage case before the commission, before the arbitrator, got an adverse ruling from the arbitrator. After the adverse ruling from the arbitrator was obtained, then they filed the deed check. So they had an adverse ruling and the court said, no, you can't bypass the administrative review procedures through the deed check. That didn't happen in ultimate backyard and it didn't happen here. The arbitrator has not addressed any of the coverage issues, the late notice issues in our case. So we're not circumventing the administrative procedures by filing the deed check and requesting a stay. I think Mr. Eaton brought up the claimant in the camp case, right? I mean, everything's held up with the stay. If the circuit court makes the determination, right, there's a greater duty to defend than there is to pay. So, right? So if they find that there's no duty to defend or duty to pay, or if they find that there's no duty to defend or pay, you know, what's the difference that it's proceeding in the camp case, that the camp case is going forward? Whether there's an attorney there at the end of the day or not, you know, why can't it proceed simultaneously? Well, there is an attorney there representing the employer, and the employer is primarily. Yeah, there just wouldn't be somebody from the carrier. Right, and there's somebody currently from West Bend, you know, following the case, but we're not defending the employer in the commission. But I think the problem is you have, you know, delay, you have added costs, and you have the potential for inconsistent rulings. And I think those are problems that are avoided when the circuit court exercises its jurisdiction and decides the coverage case before the camp case goes forward. And, you know, finally, I just, the Hartman case and Gunnels, which is cited in Hartman, in both those cases, the courts said, and both involved equitable remedies, both involved injunctions relating to camp proceedings. But in both, the courts reversed, this court reversed the injunctions because the issues, the underlying issues involved the right to benefits. Or in Hartman, it was whether the employer had a defense or could reduce the benefits. Both of those are issues which are exclusively in the jurisdiction of the workers' camp case. So they're distinguishable from our case because our issue isn't one that is exclusively within the jurisdiction of the commission. Late notice is an issue, as we said, but based on skill and concurrent jurisdiction. Mr. Lucas, your time. Thank you. Case number 124690, West Bend Mutual Insurance Company versus TRRS Corporation, Bernardino, will be taken under advisement as agenda number 14. Counsels, Mr. Eaton and Mr. Lucas, thank you for your arguments today.